UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CHARLES THOMAS, | ) | |
| on behalf of himself | ) | |
| and all others similarly situated, | ) | No. 12-cv-4235(ADS)(AKT) |
| | ) | |
| Plaintiff, | ) | CLASS ACTION |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICAN SERVICE FINANCE | ) | |
| CORPORATION d/b/a | ) | |
| MERCHANTS INTERSTATE | ) | |
| COLLECTION AGENCY, | ) | |
| | ) | |
| Defendant. | ) | |

**Plaintiff's Memorandum of Law in Opposition to
Defendant's Motion to Dismiss**

Respectfully submitted,

Attorneys for Plaintiff
Brian L. Bromberg
Michael N. Litrownik
Bromberg Law Office, P.C.
40 Exchange Place, Suite 2010
New York, NY 10005
Tel: (212) 248-7906
Fax: (212) 248-7908

Joseph M. Mauro
The Law Office of Joseph Mauro, LLC
306 McCall Ave
West Islip, NY 11795
Tel: (631) 669-0921
Fax: (631) 669-5071

## Table of Contents

Statement of Facts...........................................................................................1

Legal Standard.............................................................................................1

Legal Argument...........................................................................................2

I.  American Service Finance Corp.'s illegal and deceptive
    conduct is covered by the FDCPA.................................................................2

        A. ASF is a "debt collector" under the FDCPA...........................................4

II. Because Defendant's offer of judgment improperly capped
    Plaintiff Thomas' entitlement to attorney fees under the FDCPA,
    ASF did not offer all of the relief to which Thomas is entitled and,
    therefore, did not moot his claims...........................................................11

III. Even assuming that ASF had offered the maximum individual
     damages available under the FDCPA, Thomas' class claims would
     not have been rendered moot..................................................................16

        A. ASF's offer of judgment places Thomas and the Court in
           conflict with their respective duties and responsibilities to
           the Class................................................................................16

Conclusion................................................................................................22

i

Plaintiff Charles Thomas submits this memorandum of law in opposition to defendant American Service Finance Corp.'s ("ASF") motion to dismiss plaintiff's complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## Statement of Facts

Plaintiff filed his Complaint as a putative class action on August 23, 2012, alleging several violations of the Fair Debt Collections Practices Act("FDCPA"), 15 U.S.C. § 1692, *et seq.*, arising out of ASF's use of a false name to attempt to collect debts from consumers (ECF# 1). On October 23, 2012, ASF served an offer of judgment under Rule 68 on plaintiff. *See* Exhibit E to Declaration of Michael N. Abdo, dated November 21, 2012 (ECF# 25-5). Plaintiff did not accept the offer of judgment. On November 5, 2012, ASF moved pre-answer to dismiss plaintiff's complaint (ECF# 13-15). Plaintiff filed his First Amended Complaint and moved for class certification and to stay briefing pending further discovery on November 8, 2012 (ECF#s 17 and 18). On November 21, 2012, ASF renewed its motion to dismiss against plaintiff's amended complaint, arguing that (1) ASF is not a "debt collector" under the FDCPA despite engaging in paradigmatic debt collection activity, and (2) the Court lacks subject-matter jurisdiction because plaintiff's case is now moot (ECF# 23-25). Defendant's meritless arguments are addressed below.

## Legal Standard

In reviewing a motion to dismiss under Rule 12(b)(6), courts must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enterprises*, 448 F.3d

518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). The plaintiff must satisfy a "flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom.*, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). Courts, therefore, do not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

## Legal Argument

### I.   American Service Finance Corp.'s illegal and deceptive conduct is covered by the FDCPA

Plaintiff alleges that the defendant debt collector uses a false name and adds illegal fees while attempting to collect debts. ASF attempts to evade FDCPA liability by essentially asking the Court to create a new protected class of debt collectors that are immunized from the Act. Defendant claims that it is neither a "debt collector" nor a "creditor," even though as the assignee of the collection rights of plaintiff's alleged debt – or, in the defendant's words, the "billing agent" – it falls under either definition.

The FDCPA regulates the conduct of "debt collectors," defined by 15 U.S.C. § 1692a(6) as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

2

A "debt collector" is contrasted with a "creditor," defined by 15 U.S.C. § 1692a(4) as "any person who offers or extends credit creating a debt or to whom a debt is owed." The FDCPA's provisions generally apply only to "debt collectors," *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000), while "creditors" are not generally covered. *Id.* The FDCPA further exempts any entity from the definition of "debt collector" that is "collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity concerns a debt which was not in default at the time it was obtained by such [entity]." 15 U.S.C. § 1692a(6)(F)(iii). The FDCPA, however, withdraws that exemption in its "false name exception" in § 1692a(6), which covers creditors "who, in the process of collecting [their] own debts, use[] any name other than [their] own which would indicate that a third person is collecting or attempting to collect such debts." *Id.*

With "debt collector" and "creditor" properly defined, it becomes clear that ASF is attempting to manipulate its way out of *both* definitions, by manufacturing a loophole that would allow it to engage in any illegal debt collection whatsoever. ASF is asking this Court to create this loophole, despite the fact that ASF is engaging in debt-collection activity that is covered by both provisions. ASF claims to have received the assignment of plaintiff's account for collection before it went into default. Assuming this were true and assuming further that ASF sent out collection letters using its *true* name of "American Service Finance Corp," the FDCPA then

deems ASF to have stepped into the shoes of the original creditor, "Martial Arts America".

But here, as soon as Thomas defaulted on his account, ASF assumed a fictitious and deceptive name – "Merchants Interstate Collection Agency" – and began dunning him without giving any hint that the two companies were the one and same. Because plaintiff properly pleaded ASF as an entity that regularly engages in the collection of debts allegedly owed by consumers through correspondence and phone calls, *see* Plaintiff's Amended Complaint, ¶10, properly pleaded that ASF uses a false name when attempting to collect debts, ¶11-17, and properly pleaded that ASF either collects debts before they go into default, ¶18, or after they go into default using a fake name, ¶19, plaintiff has properly pleaded sufficient facts to find ASF to be a "debt collector" under the FDCPA.

Furthermore, as an initial matter, the issue of whether ASF began collecting on Thomas' account before or after it went into default is a disputed issue of fact that is not susceptible to determination upon a motion under Rule 12. *See, e.g., Sawabeh Information Services Co. v. Brody*, 832 F. Supp. 2d 280, 308 (S.D.N.Y. 2011). But even assuming that the Thomas' account was not in default, ASF still fits squarely under the coverage of the FDCPA.

## A. ASF is a "debt collector" under the FDCPA

Assuming that ASF began collecting on Thomas' account after it went into default, ASF fits the basic definition of "debt collector" under the FDCPA, because it "uses any instrumentality of interstate commerce or the mails in any business the

principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

But even if ASF instead began servicing plaintiff's account before it went into default, as it asserts in its motion to dismiss, ASF still falls within the scope of the FDCPA. This is so because when Thomas' account went into default, ASF began using the fictitious name of "Merchants Interstate Collection Agency" in attempting to collect the debt. Although 15 U.S.C. § 1692a(6)(F)(iii) exempts from the FDCPA's definition of "debt collector" those who attempt to collect on a debt not in default when the collection efforts began, § 1692a(6) removes that exemption from any "creditor who, in the process of collecting [its] own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6).

Under well-established case-law, ASF "stands in the shoes" of the creditor that does own the debt where the debt was assigned for servicing before the default occurred. And because ASF employs a fictitious name with the apparent goal of deceiving consumers into believing that another entity is pursuing them for the debt, ASF becomes a "debt collector" under § 1692a(6). ASF argues that it does not "step into the shoes" of the creditor because it merely served as a "billing agent to creditor, Martial Arts America, in connection with Plaintiff's Debt, prior to any default." But that is precisely why ASF has stepped into the shoes of the creditor.

*See Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355 (6th Cir. 2012) As the Sixth

Circuit recently held in the *Bridge v. Ocwen case*:

> The distinction between a creditor and a debt collector lies precisely in
> the language of [15 U.S.C.] § 1692a(6)(F)(iii). For an entity that did not
> originate the debt in question but acquired it and attempts to collect on
> it, that entity is either a creditor or a debt collector depending on the
> default status of the debt at the time it was acquired. The same is true
> of a loan servicer, which can either stand in the shoes of a creditor or
> become a debt collector, depending on whether the debt was assigned
> for servicing before the default or alleged default occurred.

*Id.* at 359-60 (citing *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106–8 [6th

Cir. 1996]; *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 [5th Cir. 1985]). The

Sixth Circuit accordingly did not find it necessary for the entity assigned the

collection rights in *Bridge* to also own the debt in order to find the entity to be a

debt collector. Likewise in the Third Circuit case of *F.T.C. v. Check Investors, Inc.*,

502 F.3d 159 (3d Cir. 2007), the court found that whether the defendant had owned

the debts outright or had merely received an assignment of the rights of the creditor

to be irrelevant for purposes of determining whether the defendant was acting as a

creditor or a debt collector under the FDCPA. *Id.* at 174. The Third Circuit found

the dispositive question to be whether the debt was in default at the time of the

assignment. *Id.*

    Nevertheless, ASF attempts to define itself out of the purview of the FDCPA

through a convoluted and misleading series of steps. First, ASF argues that it

merely services debts acquired before a customer defaults, Deft. Mem. of Law at 7-

10, and therefore is not a debt collector under the FDCPA. ASF neglects to mention

here that as soon as the debt goes into default it begins communicating with the

consumer using a pseudonym. Next, even though the "false name exception"

provision of § 1692a(6) exists to ensure a regulatory backstop to prevent exactly the

type of evasive and deceptive conduct used by ASF here, ASF argues that it cannot

possibly be a "creditor" under the FDCPA because it never owned the Thomas'

account, Deft. Mem of Law at 11, and therefore the "false name exception" does not

apply. By its own twisted logic, in which ASF is merely the "billing agent" for a

creditor before the loan goes into default, and then neither the debt collector nor the

creditor when it uses a pseudonym to begin attempting to collect the debt after it

does go into default, ASF concludes that it has defined itself out of the purview of

the FDCPA.

When faced with a similarly evasive and misleading argument, the Sixth

Circuit in *Bridge* rejected the defendant's attempt to create a new, immunized

category of debt collectors:

> If an entity which acquires a debt and seeks to collect it cannot be both
> a creditor and a debt collector, can it be neither? We answer no. To
> allow such an entity to define itself out of either category would mean
> that the intended protection of the FDCPA is unavailable. Both the
> statutory language and legislative history of the FDCPA establish that
> such an entity is either a creditor or a debt collector and its collection
> activities are covered under the FDCPA accordingly….Thus, we do not
> accept Defendants' argument that, even if they are not creditors under
> the Act, neither are they debt collectors. It would thwart the purpose of
> the Act to find that a non-originating debt holder is neither a creditor
> nor a debt collector based on that defendant's adoption of contradictory
> factual positions. Defendants may not so easily define themselves out
> of FDCPA coverage. Echoing the Third Circuit's sentiment, although
> the argument is rather clever, it is wrong. It would elevate form over
> substance and weave a technical loophole into the fabric of the FDCPA
> big enough to devour all of the protections Congress intended in
> enacting the legislation. The same is true of a creditor who uses any
> name other than his own which would indicate that a third person is

7

> attempting to collect the debt. No such creditor may escape liability by
> alleging that it is neither a creditor nor a debt collector and thus not
> subject to the FDCPA.

*Bridge*, 681 F.3d at 360 (citations omitted). Thus, ASF is either a "debt collector" or

a "creditor" as defined by the FDCPA. If a "debt collector," it is plainly governed by

the FDCPA. If a "creditor," it becomes a "debt collector" and loses its freedom from

the purview of the FDCPA by switching to a false name once it begins to attempt to

collect debts in default. ASF cannot be neither fish nor fowl – that is, neither

creditor nor debt collector – when it regularly attempts to collect debts due to

another, conduct the nature of which the FDCPA was specifically enacted to

regulate. *See F.T.C.*, 502 F.3d at 173 (citing S. Rep. No. 95-382, at 2, 1997

U.S.C.C.A.N. at 1697) ("The term 'debt collector,' subject to the exclusions discussed

below, was intended to cover all third persons who regularly collect debts.")

   Moreover, ASF appears to be quite aware that it has not played fair with

Thomas and the other consumers from whom it has attempted to collect using its

fake name. Notably, ASF fails to mention throughout its brief – except for a one-

time cryptic reference to "its MICA division" on page 11 – the pseudonym it uses

when it begins dunning consumers. *See* Deft. Mem of Law at 11 (referring to "its

MICA division," presumably referring to Merchants Interstate Collection Agency).

   Finally, ASF cites wholly distinguishable cases in support of the false

assertion that the "false name exception" only applies to creditors in the process of

collecting their own debts. The defendant first cites to *Coleman v. North Shore*

*Health Sys.*, No. 97–CV–1871–DRH, 1998 WL 34077715 (E.D.N.Y. July 2, 1998), in

which Judge Hurley held that the North Shore Health System ("NSHS") and North Shore University Hospital are separate entities and where the consumer received care from the Hospital, was billed by the Hospital, and had no evidence that NSHS is involved at all, NSHS cannot be a creditor under the FDCPA and therefore the "false name exception" is inapplicable. *Id.* at \*6. *Coleman* is strikingly inapposite to the situation here, where ASF began using a pseudonym as soon as the debt went into default in an apparent attempt to trick consumers into believing that the account had been forwarded to an outside agency for collection – a practice that is specifically contemplated in and expressly prohibited by at least three sections the FDCPA. *See, e.g.,* 15 U. S. C. § 1692e(9); 15 U. S. C. § 1692e(14); and 15 U.S.C. § 1692j(a) ("It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.")

The defendant next cites *Doherty v. Citibank (South Dakota) N.A.*, 375 F. Supp. 2d 158 (E.D.N.Y. 2005), where Judge Spatt dismissed FDCPA claims against Citibank – the original creditor – because the plaintiff did not dispute that Citibank was a creditor. *Id.* at 162. That case has no application here, where Thomas has alleged that ASF "stepped into the shoes" of the creditor, but lost any protection afforded a creditor because it used a false name to attempt to collect Thomas' debt. Finally, the defendant cites *Wood v. Capital One Servs., LLC*, 718 F. Supp. 2d 286

9

(N.D.N.Y. 2010) for a similar proposition. Similarly, *Wood* is inapposite to this case, because it is undisputed that Martial Arts America – like Capital One Bank in *Wood* – is the creditor, *id.* at 290-91, and therefore there are no facts supporting the conclusion that Martial Arts America itself – as opposed to ASF – used a false name that would take it outside the protections afforded by § 1692a(6)(F)(iii). In other words, all three of these cases cited by ASF involved situations where another entity was clearly the "creditor" under the FDCPA and consequently would only be covered by the FDCPA when using a false name to collect debts. Here, by contrast, ASF is alleged to act as a servicer that has "stepped into the shoes" of the creditor before the debt goes into default, and then as a debt collector using a false name after the debt has gone into default. ASF's method of operation is thus most similar to Deutsche Bank National Trust Co. and its purported loan servicer, Ocwen Federal Bank, in *Bridge*.

In sum, ASF is attempting to have its cake and eat it too. ASF is claiming to be a benign "billing agent" going by the unthreatening name of American Service Finance, Corp., which may very well be entitled to an exemption from the FDCPA. But when ASF wants to scare consumers into paying allegedly overdue bills, it adopts the false, unregistered and considerably more intimidating name of "Merchants Interstate Collection Agency," without giving any indication that the latter name is in any way related to the former. ASF then adds illegal fees to the alleged debt and gouges the consumers. After having done all this, ASF is now attempting to define itself out of coverage under the FDCPA, and thereby

10

attempting to evade liability for its deceptive and illegal conduct. Thomas

respectfully submits that the Court should not countenance this effort. To grant

such the request would deny Thomas the protections of the FDCPA by creating a

new, immunized category of debt collectors. This new, immunized group of super-

collectors would be free not only to impose illegal collection fees (as in the instant

matter), but to violate every other provision of the FDCPA. Congress clearly did not

intend such a consequence.

II.    **Because Defendant's offer of judgment improperly capped Plaintiff Thomas' entitlement to attorney fees under the FDCPA, ASF did not offer all of the relief to which Thomas is entitled and, therefore, did not moot his claims.**

Defendant ASF's offer of judgment does not offer all of the relief that to which

plaintiff Thomas is entitled, because the offer capped his entitlement to attorney

fees under the FDCPA. ASF's offer of judgment states, in relevant part, as follows:

> Pursuant to Rule 68 of the Federal Rules of Civil Procedure ("FRCP"), Defendant American Service Finance Corporation ("ASF") by its counsel below, hereby offers to allow Judgment to be entered against it in this action in the aggregate amount of: (i) $1,000, the maximum statutory penalty prescribed by 15 U.S.C. § 1692k(a)(2)(A); (ii) the greater of (a) $769, the total outstanding debt owed by Plaintiff to Martial Arts America; or (b) actual damages to be determined by the court; and (iii) costs of the action, together with reasonable attorney's fees incurred by Plaintiff *to date* as determined by the court.

*See* ECF #25-5 (emphasis added).

But a successful FDCPA Plaintiff is entitled to "the costs of the action,

together with a reasonable attorney's fee as determined by the court." 15 U.S.C. §

1692k. And it is well-settled law in the Second Circuit that a successful plaintiff

petitioning the court for an attorney's fee award is entitled to fees expended in

11

making the fee petition. The Second Circuit ruled definitively on this issue 23 years

ago in *Gagne v. Maher*, 594 F.2d 336 (2d Cir. 1979), *aff'd on other grounds*, 448 U.S.

122 (1980):

> The question is thus technically open in this court, and we believe
> there are strong reasons for adopting the approach of the First and
> Third Circuits. We agree with  Judge Garth's statement in *Prandini*,
> supra, that: If an attorney is required to expend time litigating his fee
> claim, yet may not be compensated for that time, the attorney's
> effective rate for all the hours expended on the case will be
> correspondingly decreased. . . . Such a result would not comport with
> the purpose behind most statutory fee authorizations, *viz*, the
> encouragement of attorneys to represent indigent clients and to act as
> private attorneys general in vindicating congressional policies. 585
> F.2d at 53. In a decision upon which *Lund v. Affleck*, *supra*, relied, the
> First Circuit pointed out that (t)o hold otherwise would permit a deep
> pocket losing party to dissipate the incentive provided by an award
> through recalcitrance and automatic appeals.

*Id.* at 344.

In the case of *Porzig v. Dresdner*, 497 F.3d 133 (2d Cir. 2007), the Second

Circuit reiterated the "mandatory" nature of its holding in *Gagne*:

> Moreover, it is apparent the Panel failed to award Porzig any
> attorney's fees whatsoever for the time his attorney spent in District
> Court successfully litigating his statutory right to the fees or the
> attorney time spent relitigating the issue in front of the panel after
> remand from the District Court – fees which, as had been made clear
> ot the Panel, were mandatory.

*Id.* at 142 (*citing Gagne*, 594 F. 2d at 344). *See also*, *Weyant v. Okst*, 198 F.3d 311,

316 (2d Cir. N.Y. 1999); *Cooper v. Sunshine*, No. 00 CIV 8898 (LTS)(JCF), 2001 WL

740765, at *4 (S.D.N.Y. June 27, 2001) (FDCPA case) ("There is no doubt that a

prevailing plaintiff is entitled to reasonable compensation for time spent seeking an

award under a fee-shifting statute."); *Dowling v. Kucker Kraus & Bruh, L.L.P.*, No.

12

99 CIV 11958 (RCC), 2005 WL 1337442 (S.D.N.Y. June 6, 2005); *Cinelli v. MCS Claim Services,* 236 F.R.D. 118, 122 (E.D.N.Y. May 23, 2006) (awarding *prospective* attorney's fees and costs under the FDCPA for administering class settlement after judgment).

Here, ASF's offer of judgment did not offer Thomas all relief to which he was entitled, in that the offer deprived him of his right to obtain attorney fees for the fee application necessitated by the offer. If Thomas had accepted ASF's offer, he would have needed to petition the court for a determination of the fee award. In doing so, he would have incurred attorney fees for the time his counsel would have expended making such an application. It is also reasonable for Thomas to anticipate that ASF would vigorously oppose the fee petition, which would likely require Thomas' attorneys to submit a reply brief.  Under its offer of judgment, ASF would not have been obligated to reimburse Thomas for these fees. Accepting the offer of judgment would therefore have negated Plaintiff's right to these fees. *See Foster v. Kings Park Central School Dist.*, 174 F.R.D. 19, 29 (E.D.N.Y. 1997); *Guerrero v. Cummings*, 70 F.3d 1111, 1113 (9th Cir. 1995*); Hernandez v. Asset Acceptance*, LLC, 279 F.R.D. 594 (D. Colo. 2012); *Caputo v. Prof'l Recovery Servs.*, No. 00-4208, 2004 U.S. Dist. LEXIS 12478 (D. Kan., June 9, 2004); *McKenna v. National Action Financial Services, Inc.*, No. 07-60889, 2008 WL 2389016, at *1 (S.D. Fla. June 10, 2008); *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 981 (9th Cir. Cal. 2008) ("[I]t would be inconsistent to dilute a fees award by refusing to compensate attorneys for the time they reasonably spent in establishing their rightful claim to

the fee." This would have left Thomas in the position of paying his own attorney fees for the fee application. These un-reimbursed fees would have exceeded the $1,000.00 award the Defendant's offered the Plaintiff. *See, e.g.*, *Garcia v. Resurgent Capital Servs., L.P.*, 2012 U.S. Dist. LEXIS 123889, 37-38 (N.D. Cal. Aug. 30, 2012)(awarding $16,470 for fee petition in recent FDCPA case); *Dowling v. Kucker Kraus & Bruh, L.L.P.*, 2005 WL 1337442 (S.D.N.Y. June 6, 2005) (awarding 13 hours of legal time for fee petition in FDCPA case); *Cooper v. Sunshine*, 2001 WL 740765 (S.D.N.Y. 2001) (awarding 21 hours of legal time for fee petition in FDCPA case; *Goins v. JBC & Associates, Inc.,* No. 03-636, 2006 U.S. Dist. LEXIS 8717 (D. Conn.  March 6, 2006) (awarding 5 hours of legal time for fee petition in FDCPA case). This would have left the Plaintiff with a *net loss*.  Thus, ASF's offer of judgment did not offer Thomas all the relief he could obtain under the FDCPA; had he accepted the offer, he would have *lost* money.

Capping Thomas' attorney fees in this manner defeats the entire purpose of the fee-shifting aspect of the FDCPA.  In *Edge v. C. Tech Collections, Inc.*, 203 F.R.D. 85, 89 (E.D.N.Y. 2001), Judge Spatt addressed this issue. The Court wrote,

> C. Tech's offer of judgment was for the sum of $ 1000 plus attorney's fees and costs in the amount of $ 2500 for a total offer of $ 3500. As aptly pointed out in *Wilner II*, the attorney's fees and costs provided for by the FDCPA are integral to that statute. Therefore, an offer of judgment that caps those costs and fees cannot represent more money than the plaintiff could receive under the statute. *See Wilner II*, 201 F.R.D. at 323. Because C. Tech's offer of judgment caps the costs and attorney's fees, it is not offering the maximum amount Edge could recover under the statute. Accordingly, Edge still has a personal stake in the litigation, which therefore is not moot. See *Ambalu*, 194 F.R.D. at 453. Because a case or controversy still remains, C. Tech's motion to

dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) is denied.

*Id.* at 89.

In *Weissman v. ABC Financial Services, Inc.*, 203 F.R.D. 81, 83 (E.D.N.Y. 2001), the Court was again asked to address this issue. Following the reasoning in *Wilner II* and *Edge*, the Court again ruled that an offer of judgment that caps attorney fees in an FDCPA matter is not a "make whole" offer. Therefore, the Court refused to dismiss because the plaintiff still had a personal stake in the matter, and a case or controversy remained. *Id.* at 83.

In *McKenna v. National Action Financial Services, Inc.*, No. 07-60889, 2008 WL 2389016 at 1 (S.D. Fla. June 10, 2008), the Court was asked to address an offer of judgment in an FDCPA matter that contained language very similar to the offer made by ASF here. The offer of judgment in *McKenna* offered $2001.00 in damages and attorney's fees and costs "as of the date of this offer." In addressing this capping of attorney's fees, the Court stated:

> Although Defendant's Offer of Judgment purported to be a full and complete satisfaction of Plaintiff's claims, its sweeping scope fails to adequately compensate Plaintiff. For example, Defendant has attempted to prevent Plaintiff's Counsel from recovering fees he may reasonably incur after the date of the Offer. Rather than leave the issue of fees in the sound discretion of the Court, Defendant's Offer, if accepted, would prevent Plaintiff's Counsel from recovering fees incurred in filing a Motion For Attorney's Fees. Although the time required to prepare such a motion is minimal, the Court must take this expense into consideration to determine whether the Offer fully satisfied Plaintiff's claims and costs.

In sum, if Thomas had accepted the ASF's offer of judgment, Thomas would have had to pay his own attorney fees associated with his motion for attorney fees.

15

This would have resulted in a net loss to Thomas. Obviously, Defendant's offer of judgment did not divest the Court of subject matter jurisdiction; a case and controversy remains. *See also Hernandez v. Asset Acceptance*, LLC, 279 F.R.D. 594 (D. Colo. 2012); *Streeter v. Office of Douglas R. Burgess, LLC*, 107-CV-0097-WKW, 2008 U.S. Dist. LEXIS 13268 (M.D. Ala. Feb. 21, 2008).

## III.   Even assuming that ASF had offered the maximum individual damages available under the FDCPA, Thomas' class claims would not have been rendered moot

The problem with using offers of judgment to attempt to "pick off" class representatives, as ASF is attempting here, is that Thomas is not at liberty to accept the offer of judgment. That is, as the representative plaintiff in this class action, Thomas has a fiduciary obligation to the putative class. This is why Rule 68 is incompatible with class actions and the requirements of Rule 23. Furthermore, a representative plaintiff has limited authority to accept a settlement, formal or informal, and any class settlement is subject to the review and approval of the court regarding notice, fairness, adequacy, and reasonableness.

### A.   ASF's offer of judgment places Thomas and the Court in conflict with their respective duties and responsibilities to the Class

It is a fundamental principle of class actions that putative class members stand in a fiduciary relationship with the class representatives. *See Cohen v. Beneficial Indus. Loan Corp.* 337 U.S. 541, 549, 69 S. Ct. 1221, 1227 (1949) (class representative is volunteer who assumes position of fiduciary nature); *Kline v. Wolf*, 88 F.R.D. 696, 700 (S.D.N.Y. 1981), *aff'd*, 702 F.2d 400 (2d Cir. 1983) (class representative serves as fiduciary to advance and protect interests of those he

16

purports to represent); Manual for Complex Litigation, Third § 30.44 (1995). But Rule 68 makes no distinction between individual and class actions. Consequently, it does not address the inherent conflict of interest faced by a representative plaintiff to whom the offer has been made: the offer exposes the representative-offeree to liability for costs and expenses that could not be recouped from unnamed class members. Further, it does not mesh with the careful supervision required of the district court for settlements of class actions under Rule 23 because Rule 68 sets a short, nondiscretionary time-limit on the plaintiff's power of acceptance, which is clearly insufficient to consider the merits of the offer, provide notice to class members, and obtain court approval. *See Marek v. Chesny*, 473 U.S. 1, 33, n.49 (1985) (Brennan, J. dissenting).

The leading treatise on class actions explains why Rule 68 should not apply where a case is filed as a class action:

> On its face, the language of Rule 68 is mandatory. A question arises as to the applicability of this rule in a class action context when an offer of judgment is made to a class representative. Mandatory imposition of Rule 68 creates "a potential conflict between the named party's self-interest and his fiduciary duty to the class." Class representatives must balance their personal liability for costs against their prospective share of the class recovery. If exposure to costs is substantial in comparison to the likely results of obtaining monetary or injunctive relief at trial, a conflict arises between the policies behind Rules 23 and 68. By denying the mandatory imposition of Rule 68 in class actions, class representatives will not be forced to abandon their litigation posture each time they are threatened with the possibility of incurring substantial costs for the sake of absent class members.

H. Newberg and A. Conte, *3 Newberg on Class Actions*, § 15.36 (3d ed. 1992) (citations omitted).

The conflict between the policies behind Rules 23 and 68 has led the vast majority of courts to reject attempts by defendants to subvert a pending class action with a Rule 68 offer. *See Greisz v. Household Bank (Illinois), N.A.*, 176 F.3d 1012,1015 (7th Cir. 1999) (court observed that the tactic "is precluded by the fact that before the class is certified, which is to say at a time when there are many potential party plaintiffs to the suit, an offer to one is not an offer of the *entire* relief sought by the suit, (citing cases) (emphasis in original); *Alpern v. Utilicorp United, Inc.*, 84 F.3d 1525, 1539 (8th Cir. 1996) ("[j]udgment should be entered against a putative class representative on a defendant's offer of judgment only where class certification has been properly denied and the offer satisfies the representative's entire demand for injuries and costs of the suit. This rule protects a class representative's responsibilities to the putative class members from being terminated by a defendant's attempts to pay off the representative's claims." (citations omitted)); *Bieneman v. City of Chicago*, 838 F.2d 962, 963-64 (7th Cir. 1988) ("[i]f a complaint includes a class allegation, the district court must address it, no matter what the parties later do….Otherwise the plaintiff could withdraw as representative unilaterally, or the parties could settle the case without the court's permission. Rule 23(e) forbids either course. If the complaint depicts the plaintiff as representative of a class, the district court must deal with the subject even if no one asks"); *Kline v. Wolf*, 702 F.2d 400, 404 (2d Cir. 1983) (reversed district court's order forcing a named plaintiff to accept an involuntary "settlement," warning that defendants would be enabled to "'pick off' individual plaintiffs who might otherwise

expose the defendants eventually to class liability involving much larger amounts");
*Roper v. Consurve, Inc.*, 578 F.2d 1106 1110 (5th Cir. 1978), *aff'd sub. nom. Deposit*
*Guaranty Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326 (1980) ("notion that a
defendant may short-circuit a class action by paying off the class representatives …
deserves short shrift. By the very act of filing a class action, the class
representatives assume responsibilities to members of the class. They may not
terminate their duties by taking satisfaction; a ceasefire may not be pressed upon
them by paying their claims. The court itself has special responsibilities to ensure
that dismissal does not prejudice putative members."); *see also Martin v. Mabus*,
734 F. Supp. 1216, 1222 (S.D. Miss. 1990) ("procedures prescribed by Rule 68 for
making an offer of judgment are literally inapplicable because Rule 23(e) requires
that court approval be obtained in order for a case to be dismissed or
compromised"); *Gay v. Waiters' and Dairy Lunchmen's Union*, 86 F.R.D. 500 (N.D.
Cal. 1980) (holding Rule 68 inapplicable to class actions).

And the overwhelming majority of courts considering Rule 68 in the context
of FDCPA or other consumer protection class actions have ruled contrary to
Defendants' position in this case. *See, e.g., Weiss v. Regal Collections*, 385 F.3d 337
(3d Cir. 2004); *Colbert v. Dymacol, Inc.*, 344 F.3d 334 (3d Cir. 2003); *Naposki v.*
*First Nat. Bank of Atlanta*, 18 A.D.3d 834, 797 N.Y.S.2d 99, (2d Dept. 2005); *Vega v.*
*Credit Bureau Enterprises*, No. CV-02-1550 (DGT), 2003 WL 21544258 (E.D.N.Y.
July 9, 2003); *McDowall v. Cogan*, 216 F.R.D. 46 (E.D.N.Y. May 8, 2003); *Sibersky*
*v. Borah, Goldstein, Altschuler & Schwartz, P.C.*, 242 F. Supp. 2d 273 (S.D.N.Y.

19

2002); *Nasca v. GC Services Ltd. Partnership*, No. 01 CIV 10127(DLC), 2002 WL 31040647, at *1-3 (S.D.N.Y. Sept. 12, 2002); *Parker v. Risk Management Alternatives, Inc.*, 206 F.R.D. 211, 214 (N.D. Ill. 2002); *Liles v. American Corrective Counseling Services, Inc.*, 201 F.R.D. 452, 454-55 (S.D. Iowa 2001); *White v. OSI Collection Services, Inc.*, 2001 WL 1590518 (E.D.N.Y. Nov. 5, 2001); *Schaake v. Risk Management Alternatives, Inc.*, 203 F.R.D. 108 (S.D.N.Y. 2001); *Henderson v. Eaton*, 2001 WL 969105, at *3-6 (E.D. La. Aug. 23, 2001); *Kremnitzer v. Cabrera & Rephen, P.C.*, 202 F.R.D. 239, 242-44 (N.D. Ill. 2001); *Woodard v. Online Information Services*, 191 F.R.D. 502, 508 (E.D.N.C. 2000); *Asch v. Teller, Levit & Silvertrust, P.C.*, 200 F.R.D. 399 (N.D. Ill. Aug. 5, 1999); *Namdar v. JAS Collection Agency, Inc.*, No. 97-CV-6857, 1999 WL 33268061 (E.D.N.Y. July 6, 1999); *but see Jones v. CBE Group, Inc.*, 215 F.R.D. 558 (D. Minn. 2003); *Greif v. Wilson, Elser, Moskowitz, Edelman & Dicker LLP*, 258 F. Supp. 2d 157 (E.D.N.Y. 2003); *Weiss v. Fein, Such, Kahn & Shepard, P.C.*, No. 01 Civ. 1086(AGS), 2002 WL 449653 (S.D.N.Y. Mar 22, 2002); *Tratt v. Retrieval Masters Creditors Bureau, Inc.*, No. 00-CV-4560 (ILG), 2001 WL 667602 (E.D.N.Y. May 23, 2001); *Ambalu v. Rosenblatt*, 194 F.R.D. 451 (E.D.N.Y. 2000).

Notably, ASF neglects to even cite – much less distinguish – virtually all of the 30-odd decisions, including most of the ones above, in which federal courts considering Rule 68 in the context of FDCPA or other consumer protection class actions have ruled contrary to ASF's position. And the few cases ASF does cite are distinguishable. For example, in *Grief v. Wilson, Elser, Moskowitz, Edelman &*

*Dicker LLP*, 258 F. Supp. 2d 157 (E.D.N.Y. 2003), the plaintiff had failed to move for class certification for *20 months*, rendering baseless any risk that the defendant made the Rule 68 offer merely to "pick off" the class representative. *Id.* at 159. Here, not only has Thomas moved for class certification less than three months after filing the complaint – on the same day he filed his First Amended Complaint before having any opportunity to obtain any basic discovery, including numerosity – but ASF served its defective offer of judgment for the sole strategic purpose of "picking off" the class representative, so as to move *pre-answer* to dismiss.

In the leading federal circuit court to address the issue in the context of an FDCPA case, the Third Circuit, in *Weiss v. Regal Collections*, 385 F.3d 337 (3d Cir. 2004), thoroughly analyzed the relevant precedent and public policy, holding that "[a]bsent undue delay in filing a motion for class certification, therefore, where a defendant makes a Rule 68 offer to an individual claim that has the effect of mooting possible class relief asserted in the complaint, the appropriate course is to relate the certification motion back to the filing of the class complaint." *Id.* at 348.

In sum, Thomas filed this case as a class action. He and his counsel thereby assumed a responsibility to members of the Class. Moreover, the requirements of preliminary approval, class notice, and final approval under Rule 23 cannot be addressed within the terms of this Rule 68 offer. Accordingly, the case should proceed as a class action.

21

## Conclusion

ASF has attempted to evade both regulatory scrutiny and class treatment for its deceptive and illegal conduct through meritless legal arguments and strategic maneuvers. But its efforts should respectfully fail because it cannot define itself out of coverage under the FDCPA and it cannot strategically "pick off" a class representative and then attempt to moot this case after plaintiff has moved for class certification. For these reasons, the defendant's motion to dismiss should be denied.

PLAINTIFF CHARLES THOMAS,
Individually And On Behalf Of The Class,

By:  /s/ Brian L. Bromberg
Brian L. Bromberg
One of Plaintiff's Attorneys

**Attorneys for Plaintiff**
Brian L. Bromberg
Michael N. Litrownik
Bromberg Law Office, P.C.
40 Exchange Place, Suite 2010
New York, NY 10005
Tel: (212) 248-7906
Fax: (212) 248-7908
Email: brian@bromberglawoffice.com

Joseph M. Mauro
The Law Office of Joseph Mauro, LLC
306 McCall Ave
West Islip, NY 11795
Tel: (631) 669-0921
Fax: (631) 669-5071
Email: joemauroesq@hotmail.com