FILED
CLERK

5/7/2013 3:48 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
CHARLES THOMAS on behalf of himself and
all others similarly situated,

                        Plaintiff,

                  -against-

AMERICAN SERVICE FINANCE CORPORATION
d/b/a MERCHANTS INTERSTATE COLLECTION
AGENCY,

                       Defendant.
--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
12-CV-4235 (ADS) (AKT)

**APPEARANCES:**

**Bromberg Law Office., P.C.**
*Attorneys for the Plaintiff*
40 Exchange Place
Suite 2010
New York, NY 10005
    By:  Brian L. Bromberg, Esq., and Michael Noah Litrownik, Esq., Of Counsel

**The Law Office of Joseph Mauro, LLC**
*Attorney for the Plaintiff*
306 McCall Avenue
West Islip, NY 11795
    By:  Joseph Mauro, Esq., of Counsel

**Cadwalader Wickersham & Taft LLP**
*Attorneys for the Defendant*
One World Financial Center
New York, NY 10281
    By:  Howard R. Hawkins, Esq., and Michael Nicholas Abdo, Esq., of Counsel

**SPATT, District Judge.**

       On August 23, 2012, the Plaintiff Charles Thomas ("the Plaintiff"), on behalf of himself

and all others similarly situated, commenced this action against the Defendant American Service

Finance Corporation d/b/a Merchants Interstate Collection Agency ("the Defendant") for alleged

acts committed by the Defendant in violation of the Fair Debt Collection Practices Act, 15

U.S.C. § 1692 et seq. ("FDCPA").  Presently before the Court is the Defendant's motion to dismiss the Plaintiff's Second Amended Complaint.  For the reasons set forth below, this Court grants the Defendant's motion.

## I.      BACKGROUND

Unless otherwise stated, the following facts are drawn from the Plaintiff's Second Amended Complaint and construed in a light most favorable to the Plaintiff.

### A.  Underlying Facts

On or about January 16, 2012 the Plaintiff entered into a contract with H. Shin Tae Kwon Do Center, Inc. d/b/a Martial Arts America ("Martial Arts America"), a karate school located in Hicksville, New York.  (2d Amend. Compl., ¶ 20; Abdo Decl., Exh. B.)  The contract provided for the Plaintiff's son to receive karate lessons from Martial Arts America for a period of six months, starting in February 2012 and ending in August 2012.  (2d Amend. Compl., ¶ 21; Abdo Decl., Exh. B.)  Under the terms of the contract, the Plaintiff agreed to pay a total of $909 for the lessons and to make an initial down payment of $195.  (Abdo Decl., Exh. B.)   The Plaintiff further agreed to pay the remaining balance in six monthly installments of $119, with the first installment being payable on February 15, 2012 and all subsequent installments being payable on the same day of each consecutive month until the agreement was paid in full.  (Abdo Decl. Exh. B.)

The monthly installment payments were to be paid by a method known as direct deposit, in which the payments were made from the Plaintiff's checking account to the Defendant, which was allegedly Martial Arts America's "billing company."  (2d Amend. Compl., ¶ 22; Abdo Decl., Exh. B.)  According to the Plaintiff, the Defendant "is a Colorado Corporation not licensed to do business in New York" and that "regularly engages in the collection of debts

allegedly owed by consumers through correspondence and telephone calls."  (2d Amend. Compl., ¶¶ 9–10.)  The Defendant took an unspecified number of payments from the Plaintiff's checking account using the direct deposit method, but then the Plaintiff defaulted on his monthly payments.  (2d Amend. Compl., ¶ 23.)

Following the Plaintiff's default, the Defendant allegedly began using the pseudonym "Merchants Interstate Collection Agency" to try to collect the defaulted debt from the Plaintiff. (2d Amend. Compl., ¶ 24.)  In this regard, on or about June 18, 2012, the Defendant mailed the Plaintiff a letter on letterhead indicating that the letter was sent from "Merchants Interstate Collection Agency."   (2d Amend. Compl., ¶¶ 25–27, Exh. A.)  The Defendant had never previously used the name "Merchants Interstate Collection Agency" during its relationship with the Plaintiff.  (2d Amend. Compl., ¶ 29.)  Moreover, the June 18, 2012 letter did not mention that "Merchants Interstate Collection Agency" was the Defendant American Service Finance Corporation.  (2d Amend. Compl., ¶ 28, Exh. A.)  In fact, the June 18, 2012 letter did not mention the Defendant at all.  (2d Amend Compl., ¶ 28, Exh. A.)   Further, the June 18, 2012 letter indicated that "Merchants Interstate Collection Agency" was a debt collection agency and a member of the American Collector's Association.  (2d Amend. Compl., ¶ 31, Exh. A.)  The Plaintiff asserts that the Defendant used the pseudonym "Merchants Interstate Collection Agency" in order to "give the false impression that a third party was now involved in the process of collecting the defaulted debt."  (2d Amend. Compl., ¶ 30.)

The June 18, 2012 letter noted that Martial Arts America was the creditor and the total debt owed by the Plaintiff was $769.00.  (2d Amend. Compl., ¶ 32, Exh. A.)  However, the Plaintiff had incurred no late charges.  (2d Amend. Compl., Exh. A.)  The letter advised the following:

The above-mentioned creditor ["Merchants Interstate
Collection Agency"] has asked us to bring this past due account to
your attention.  This is to put you on notice that the above
mentioned creditor reserves the right to report unpaid accounts to
the reporting division for the credit bureau.
It is imperative that you remit the full balance to this office
by return mail or call our office today to make payment by phone
at 303-986-6520.
. . . .
If you dispute the validity of this debt or any portion of it in
writing within 30 days, we will mail verification of the debt to you.
If you do not dispute the validity of this debt or any portion of it
within 30 days, we will assume it is valid.  At your request in
writing within 30 days, we will provide you with the name and
address of the original creditor if different from the current
creditor.  If you refuse to pay the debit or if you wish our agency to
cease further communication and you so advise our agency in
writing, we shall not communicate further with you except:  A. To
advise you that we intend to invoke specified remedies permitted
by law or that we may invoke specified remedies, which we
ordinarily invoke; or B. To advise you our efforts are being
terminated.  You, the consumer, have the right to request that
Merchants Interstate Collection Agency cease all telephone
communications to your place of employment.
For information about the Colorado Fair Debt Collection
Practices Act, see www.coloradoattorneygeneral.gov/ca.
This is an attempt to collect a debt.  Any information
obtained will be used for that purpose.

(2d Amend. Compl., Exh. A.)  According to the Plaintiff, this was a form letter and violated one

or more provisions of the FDCPA.  (2d Amend. Compl., ¶¶ 33, 35.)

About one month later, on or about July 23, 2012, the Defendant mailed the Plaintiff a

second letter, again using the pseudonym "Merchants Interstate Collection Agency."  (2d

Amend. Compl., ¶¶ 36–40.)  The July 23, 2012 letter also did not mention the Defendant in any

way.  (2d Amend. Compl., ¶ 39, Exh. B.)  In large typeface, the letter stated "WE ARE

PROFESSIONAL COLLECTORS."  (2d Amend. Compl., Exh. B.)  Like the June 18, 2013

letter, the July 23, 2012 letter indicated that Martial Arts America was the creditor and that the

total debt owed by the Plaintiff was $769.00.  (3d Amend. Compl., Exh. B.)  However, the July

23, 2012 letter, unlike the June 18, 2012 letter, described the total debt as including (1) an amount due of $739.00 and (2) a late charge of $30.00.  (2d Amend. Compl., ¶ 31, Exh. B.)

## B.  Procedural History

As mentioned above, on August 23, 2012, the Plaintiff commenced this action by filing the Original Complaint in the Eastern District of New York.  He sought actual and statutory damages pursuant to 15 U.S.C. § 1692k, attorney's fees and costs and declaratory and injunctive relief.   (Orig. Compl., "WHEREFORE" ¶.)  The Original Complaint raised class allegations and brought one cause of action for violations of the FDCPA, which was asserted by the Plaintiff individually and on behalf of the class pursuant to Fed. R. Civ. P. 23.  (Orig. Compl., ¶¶ 26–43.)

Specifically, the Plaintiff alleged that by mailing the June 18, 2012 letter to the Plaintiff, and by sending similar form letters to other class members, the Defendant violated the FDCPA by (1) misrepresenting the source of the letter by not referencing the Defendant's actual name in any manner; (2) falsely indicating that "Merchants Interstate Collection Agency" was collecting the debt on behalf of Martial Arts America; (3) giving the false impression that there had been a change in the company that is collecting the alleged debt, in that the letter indicated that a company other than the Defendant was collecting the debt, when in reality the Defendant and Merchants Interstate Collection Agency were one in the same; (4) falsely indicating that the Defendant was permitted to charge the consumer $29.00 as a "service fee" for "returned items"; (5) indicating that Martial Arts America was the creditor and failing to reference the Defendant; and (6) failing to inform the Plaintiff that the 30-day period to dispute the debt began to run from the date that the letter was received by the Plaintiff.  (Orig. Compl., ¶¶ 38–43.)

On October 23, 2012, the Defendant made an Offer of Judgment pursuant to Fed. R. Civ. P. 68.  (Abdo Decl;, Exh. H.)  Without making any admissions as to its liability or the Plaintiff's

damages, the Defendant offered to allow the following judgment to be entered against it in the action:  (1) $1,000, which is the maximum statutory penalty prescribed under 15 U.S.C. § 1692k(a)(2)(A); (2) the greater of (a) $769, the total outstanding debt owed by the Plaintiff to Martial Arts America or (b) actual damages to be determined by the Court; and (3) costs of the action, together with reasonable attorney's fees incurred by the Plaintiff to date as determined by the Court.  (Abdo Decl., Exh. E.)  The Plaintiff did not accept the Offer of Judgment.

On November 5, 2012, the Defendant moved to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6) and 68(d).  Thereafter, on November 8, 2012, the Plaintiff filed an Amended Complaint and moved for class certification pursuant to Fed. R. Civ. P. 23.  Like the Original Complaint, the Amended Complaint asserted one cause of action based on the Defendant's alleged violations of the FDCPA, brought on behalf of the Plaintiff individually and on behalf of the Class.   The Amended Complaint included a list of FDCPA violations similar to those listed in the Original Complaint, as discussed above.  (Amend. Compl., ¶¶ 44–49.)

However, the Amended Complaint also asserted new FDCPA violations, including that the Defendant (1) illegally added a $30.00 fee to the amount of the alleged debt; (2) falsely represented the amount of the alleged debt; (3) falsely represented services rendered and compensation which may be lawfully received by the Defendant for the collection of the alleged debt; (4) attempted to collect a fee that is not permitted by law or authorized by an agreement; (5) incorrectly stated the amount of the alleged debt; and (6) threatened to take an action that could not lawfully be taken in that the letters threatened to report the debt, including the illegal $30.00 fee, to the credit reporting agency and threatened the Plaintiff with a lawsuit to collect the entire debt, including the illegal $30.00 fee.  (Amend. Compl., ¶¶ 50–55.)   Further, the

Amended Complaint included additional factual allegations, such as details concerning the July 23, 2012 letter.  (Amend. Compl., ¶¶ 36–41.)

On November 21, 2012, the Defendant moved to dismiss the Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6) and 68(d).  On December 5, 2012, the Plaintiff opposed the Defendant's motion to dismiss, and on December 12, 2012, the Defendant submitted its reply brief.

On March 21, 2013, the Plaintiff moved for leave to file a Second Amended Complaint. Thereafter, on April 2, 2013, the parties entered into a stipulation, in which they agreed that the Plaintiff's motion for leave to amend be granted.  They further agreed that the Defendant's motion to dismiss the Amended Complaint be deemed a motion to dismiss the Second Amended Complaint and that all briefing submitted in support of or in opposition to the motion to dismiss the Amended Complaint be applied to the Second Amended Complaint.  On April 5, 2013, the Court "So Ordered" the April 5, 2013 Stipulation and the Second Amended Complaint was filed. The Second Amended Complaint was not substantively different than the Amended Complaint, except that the Second Amended Complaint expanded the definition of the class to include consumers in all of the United States, not just New York.  (2d Amend. Compl., ¶ 58.)

## II.    DISCUSSION

## A.  Legal Standard on a Fed. R. Civ. P. 12(b)(1) Motion to Dismiss

The standard for reviewing a Fed. R. Civ. P. 12(b)(1) motion to dismiss is essentially identical to the Fed. R. Civ. P. 12(b)(6) standard, discussed below, except that "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  In

adjudicating a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the court may consider matters outside the pleadings.  Id.

"A case is properly dismissed for lack of subject matter jurisdiction under [Fed. R. Civ. P.] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Id.  In this regard, "[a] federal court lacks subject matter jurisdiction over an action unless the action presents an actual case or controversy."  Milton v. Rosicki, Rosicki & Associates, P.C., No. 02 CV 3052(NG), 2007 WL 2262893, at *2 (E.D.N.Y. Aug. 3, 2007) (citing S. Jackson & Son, Inc. v. Coffee Sugar & Cocoa Exch., Inc., 24 F.3d 427, 431 (2d Cir.1994)).  Accordingly, "when parties lack a legally cognizable interest in the outcome of a case, a claim becomes moot for lack of subject matter jurisdiction.  A legally cognizable interest requires that a plaintiff have a "personal stake" in the litigation."  Id. (citations and internal quotation marks and alterations omitted).

## B.  Legal Standard on a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss

It is well-established that a complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).  Indeed, the issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).  "'Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949–50, 173 L. Ed. 2d 868 (2009)).

In deciding a motion to dismiss, the Court is required to accept the material facts alleged in the complaint as true and draw all reasonable inferences in the Plaintiff's favor. Ashcroft, 129 S. Ct. 1937 at 1949–50; Zinermon v. Burch, 494 U.S. 113, 118, 110 S. Ct. 975, 979, 108 L. Ed. 2d 100 (1990); In re NYSE Specialists Secs. Litig., 503 F.3d 89, 91 (2d Cir. 2007). As such, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." Iqbal, 129 S. Ct. at 1950. In its analysis, the Court may refer "to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Brass v. Am. Film Tech., Inc., 987 F.2d 142, 150 (2d Cir. 1993); see also Karmilowicz v. Hartford Fin. Servs. Group, No. 11-3284-cv, 2012 U.S. App. LEXIS 18394, at *5–6 (2d Cir. Aug. 30, 2012).

However, "although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Harris, 572 F.3d at 72 (quoting Iqbal, 129 S. Ct. at 1949). Only if this Court is satisfied that "the complaint cannot state any set of facts that would entitle the plaintiff to relief will it grant dismissal pursuant to Rule 12(b)(6)." Hertz Corp. v. City of N.Y., 1 F.3d 121, 125 (2d Cir. 1993).

## C.  Legal Standard Under the FDCPA

"The FDCPA creates a general prohibition against the use of 'false, deceptive, or misleading representation or means in connection with the collection of any debt.'" Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 300 (2d Cir. 2003) (citing 15 U.S.C. § 1692e). In

this regard, under this prohibition, a debt collector is prohibited from (1) falsely representing "the character, amount, or legal status of any debt[] or . . . any services rendered or compensation which may lawfully be received by any debt collector for the collection of the debt,"  15 U.S.C. § 1692e(2); (2) "us[ing] [] any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," 15 U.S.C. § 1692e(10); (3) "us[ing] any business, company, or organization name other than the true name of the debt collector's business, company, or organization,"  15 U.S.C. § 1692e(14); and (4)"threat[ening] to take any action that cannot legally be taken or that is not intended to be taken," 15 U.S.C. § 1692e(5).

Furthermore, the FDCPA creates a second general prohibition against the use of "unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  Of relevance here, one particular practice that is barred under this prohibition is "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

In addition, "15 U.S.C. § 1692g requires debt collectors to include a 'validation notice' either in the initial communication with a consumer in connection with the collection of a debt or within five days of that initial communication, which must inform the consumer that he or she has certain rights, including the rights to make a written request for verification of the debt and to dispute the validity of debt." Miller, 321 F.3d at 309 (citing 15 U.S.C. § 1692g(a)).  In relevant part, § 1692g(a) requires that the validation notice include "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion

thereof, the debt will be assumed to be valid by the debt collector[.]"  15 U.S.C. 1692g(a)(3); <u>see</u> <u>also</u> <u>Nero v. Law Office of Sam Streeter, P.L.L.C.</u>, 655 F. Supp. 2d 200, 205 (E.D.N.Y. 2009). "[U]nless a debt collector conveys this statutorily-required information, it violates the [FDCPA]."  <u>Hecht v. Green Tree Servicing, LLC</u>, Civil No. 3:12cv498(JBA), 2013 WL 164514, at *2 (D. Conn. Jan. 15, 2013).

"Courts in this Circuit evaluate claims under the FDCPA according to how the 'least sophisticated consumer' would understand the communication."  <u>Gabriele v. American Home</u> <u>Mortg. Servicing, Inc.</u>,  2012 WL 5908601, at *3 (2d Cir. Nov. 27, 2012) (citing <u>Ellis v.</u> <u>Solomon & Solomon, P.C.</u>, 591 F.3d 130, 135 (2d Cir.2010)).  "Under this standard, 'collection notices can be deceptive if they are open to more than one reasonable interpretation, at least one of which is inaccurate.'"  <u>Easterling v. Collecto, Inc.</u>, 692 F.3d 229, 233 (2d Cir. 2012) (quoting <u>Clomon v. Jackson</u>, 988 F.2d 1314, 1319 (2d Cir.1993)).  However, "FDCPA protection 'does not extend to every bizarre or idiosyncratic interpretation of a collection notice' and courts should apply the standard 'in a manner that protects debt collectors against liability for unreasonable misinterpretations of collection notices.'"  <u>Id.</u> at 233–34.

Of importance, "the plaintiff's actions in response to [a] collection letter are not determinative of the question of whether there has been a violation of the FDCPA.  Rather, the issue is an objective one: namely, whether the language of the letter would mislead the least sophisticated consumer."  <u>Wyler v. Computer Credit, Inc.</u>, No. 04CV2762 CLP, 2006 WL 2299413, at *11 (E.D.N.Y. Mar. 3, 2006).  "Although courts are divided on whether breach of the least sophisticated consumer standard is a question of law or fact, the trend in the Second Circuit is to treat this question as a matter of law that can be resolved on a motion to dismiss."  <u>Rozier v. Fin. Recovery Sys.</u>, No. 10-CV-3273 (DLI) (JO), 2011 WL 2295116, at *2 (E.D.N.Y.

June 7, 2011) (quoting <u>Beauchamp v. Fin. Recovery Services, Inc.</u>, No. 10 Civ. 4864(SAS), 2011 WL 891320, at *2 n.18 (S.D.N.Y. Mar. 14, 2011)).

In addition, courts have found that "the FDCPA is a strict liability statute and, therefore, does not require a showing of intentional conduct on the part of a debt collector."  <u>Fasten v. Zager</u>, 49 F. Supp. 2d 144, 148 (E.D.N.Y. 1999); <u>see</u> <u>also</u> <u>Moore v. Diversified Collection Services, Inc.</u>, 843 F. Supp. 2d 280, 284 (E.D.N.Y. 2012).  Instead, the court need only find proof of a single violation of the FDCPA to establish civil liability against the debt collector. <u>See</u> <u>Bentley v. Great Lakes Collection Bureau</u>, 6 F.3d 60 (2d Cir. 1993); <u>Fasten</u>, 49 F. Supp. 2d at 148; <u>Mateer v. Ross, Suchoff, Egert, Hankin, Maidenbaum & Mazel, P.C.</u>, No. 96 Civ. 1756(LAP), 1997 WL 171011, at *4 (S.D.N.Y. Apr. 10, 1997); <u>Woolfolk v. Van Ru Credit Corp.</u>, 783 F. Supp. 724 (D. Conn. 1990).  However, "[a] debt collector may not be held liable . . . if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C § 1692k(c).  A debt collector who is found to have violated the FDCPA is liable for (1) actual damages; (2) statutory damages, not to exceed $1,000; and (3) the costs of the action, including reasonable attorney's fees.  15 U.S.C. § 1692k(a); <u>see</u> <u>also</u> <u>Nero</u>, 655 F. Supp. at 209–10.

**D.  As to Whether the Court has Subject Matter Jurisdiction Over the Action**

"A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction."  <u>Pressley v. City of New York</u> 2013 WL 145747, at *4–5 (E.D.N.Y. Jan. 14 2013) (citing <u>Magee v. Nassau Cnty. Med. Ctr.</u>, 27 F.Supp.2d 154, 158 (E.D.N.Y.1998) (in turn, citing <u>Rhulen Agency, Inc. v. Ala. Ins. Guar.</u>

Ass'n, 896 F.2d 674, 678 (2d Cir.1990 ))).  Thus, the Court will first consider whether it has subject matter jurisdiction over this action before considering whether the Plaintiff has stated a claim.

In this case, the Defendant argues the Court cannot exercise subject matter jurisdiction over this matter because its Rule 68 offer of judgment rendered the action moot.  According to the Defendant, its October 23, 2012 offer of judgment was sufficient to moot the case, because it offered the Plaintiff all he could hope to recover through the litigation.  The Defendant further claims that dismissal is appropriate here because it made its offer of judgment prior to the Plaintiff moving for class certification.

"Some courts have held that when a defendant makes a Rule 68 offer of judgment for the full amount of the damages that could be recovered at trial, the action is moot and should be dismissed for lack of subject matter jurisdiction."  Sibersky v. Borah, Goldstein, Altschuler & Schwartz, P.C., 242 F.Supp.2d 273, 278 (S.D.N.Y. 2002).  However, the offer of judgment is insufficient and, thus, the case is not moot "if the offer of judgment does not cover all damages, including costs and attorney's fees."  Id.  "In determining the value of the relief, defendant bears the burden of proving that the Rule 68 offer is more favorable than an award plaintiff could receive by judgment."  Milton, 2007 WL at * 2.

As an initial matter, the Court finds that the Defendant's offer of judgment in this case was sufficient.  In this regard, the Plaintiff argues that the Defendant's offer of judgment was insufficient because it limited the amount of attorney's fees the Plaintiff was entitled to recover.  Specifically, the Plaintiff asserts that the Defendant's offer of judgment only included "costs of the action, together with reasonable attorney's fees incurred by [the] Plaintiff *to date* as

determined by the court" and did not take into account the costs the Plaintiff would incur in

filing an application for attorney's fees with the Court.  (Abdo Decl., Exh. E., emphasis added)

      The Court recognizes that where "the offer of judgment capped costs and attorney's fees,

the defendant did not offer the plaintiff the maximum amount recoverable under the statute."

Weissman v. ABC Financial Services, Inc.,  203 F.R.D. 81, 83 (E.D.N.Y. 2001); see also Edge v.

C. Tech Collections, Inc., 203 F.R.D. 85, 88 (E.D.N.Y. 2001) ("[A]n offer of judgment that caps

those costs and fees cannot represent more money than the plaintiff could receive under the

statute.").  However, "[t]he Second Circuit and numerous courts within its boundaries have

enforced and/or accepted offers of judgment which left the determination of costs and attorneys'

fees to the court."  Flick v. American Financial Resources, Inc., No. CV 10–3084(LDW)(AKT),

2012 WL 181639, at *3 (E.D.N.Y. Jan. 3, 2012).  Moreover, relevant here, courts in this Circuit

have accepted as sufficient offers of judgment in FDCPA cases that included similar "to date"

language as the offer of judgment at issue here:

> [I]n Ambalu v. Rosenblatt, 194 F.R.D. 451, 452 (E.D.N.Y.
> 2000), an offer of judgment was made in the amount of "one
> thousand dollars ($1,000), the costs of the action, and a reasonable
> attorney's fee incurred up *through the date of the offer* as
> determined by the court."  The court entered judgment against the
> defendant "in accordance with its Rule 68 offer of judgment" and
> "retain[ed] jurisdiction to determine the amount of reasonable
> attorney's fees and costs of the suit."  Ambalu, 194 F.R.D. at 453.
> The Court notes a similar result occurred in Greif v. Wilson, Elser,
> Moskowitz, Edelman & Dicker LLP, 258 F.Supp.2d 157, 159
> (E.D.N.Y. 2003) [(Spatt, J.)], where the defendant served an offer
> of judgment which "consented to judgment in favor of the plaintiff
> in the total amount of $1,000, plus costs, disbursement and
> reasonable attorneys' fees incurred by the plaintiff *to date of the
> offer*."

Id. (emphasis added).  Therefore, the Court finds that the Defendant's October 23, 2012 offer of

judgment was sufficient.

Nevertheless, "district courts in this Circuit are divided as to whether a case should be dismissed for lack of subject matter jurisdiction when a Rule 68 offer for full relief to the named plaintiff is made prior to the filing of a motion for class certification." Morgan v. Account Collection Technology, LLC, No. 05-CV-2131 (KMK), 2006 WL 2597865, at *4 (S.D.N.Y. Sept. 6, 2006).  In this regard,

> [s]ome courts readily compel a Rule 68 offer of complete relief to an individual plaintiff prior to certification and dismiss the case as moot without explicitly considering the timing of the offer.  Other courts consider the timing of the offer and the diligence of the plaintiff in pursuing class certification to determine if the plaintiff had a reasonable opportunity to file for certification or if there has been undue delay.  Yet, among these courts, there is no consistent definition of what constitutes a reasonable opportunity or an undue delay warranting dismissal.

Id. (citations omitted).

With respect to FDCPA cases, in Ambalu, the court held that "[i]f a named representative's claim becomes moot before class certification, the entire case is to be dismissed for lack of subject matter jurisdiction."  194 F.R.D. at 453.  In Ambalu, the defendant served an offer of judgment on the plaintiff, offering all that the plaintiff in his individual capacity could hope to recover through the litigation.  Id. at 452–53.  The Plaintiff had also failed to move for class certification for about one and a half years.  Id.  Accordingly, the Ambalu court dismissed the plaintiff's complaint for lack of subject matter jurisdiction.  Id.  See also Greif, 258 F.Supp.2d at 161 (finding the action to be moot where the defendant served a Rule 68 offer of judgment and the plaintiff had not moved for class certification for twenty months).

However, at least some "[c]ourts in this circuit have recognized the predicament" caused to putative class representatives in FDCPA cases when a defendant makes a Rule 68 offer of judgment to a plaintiff in his individual capacity before the defendant answered the complaint

and before the plaintiff has had an opportunity to move for class certification.  Herzlinger v.
Nichter, No. 09 Civ. 00192(JSG)(PED), 2011 WL 4585251, at *8 (S.D.N.Y. Sept. 8, 2011),
adopted by No. 7:09–CV–00192, 2011 WL 4575126, at *1 (S.D.N.Y. Oct. 3, 2011).  As such,
courts "have set forth guidelines for addressing what one court has described as 'thinly veiled
efforts to pick off the putative class representative.'"  Id. (quoting McDowall v. Cogan, 216
F.R.D. 46, 51 (E.D.N.Y. 2003)).  For example, the court in McDowall v. Cogan held "that if a
defendant wishes to make an offer of judgment prior to class certification in the interests of
effecting a reasonable settlement and avoiding the costs and inefficiencies of litigation, it must
do so to the putative class and not to the named plaintiff alone."  216 F.R.D. at 51.  Of
importance, the McDowall court only extended this rule to "situations where . . . the offer of
judgment is made before the plaintiff has had a reasonable opportunity within which to move for
class certification."  Id. at 51 n. 5.

     In reaching its conclusion, the McDowall court reasoned that "defendants should [not] be
allowed to force plaintiffs into hastily-drafted certification motions by making offers of
judgment," because otherwise a plaintiff would be forced "to make a class certification motion
before the record for such [a] motion [was] complete—indeed before an [a]nswer [was] filed."
Id. at 51.  The McDowall court further reasoned that a contrary ruling would result in "a race to
the courthouse between defendants armed with uninformed offers and plaintiffs with under-
researched certification motions."  Id.

     Other courts in this circuit have rendered holdings similar to the court's ruling in
McDowell.  See, e.g. Herzlinger, 2011 WL at *8 ("This Court cannot conclude that [the]
[p]laintiff's counsel [in an FDCPA action] acted in bad faith on the basis that his client refused to
accept an offer of judgment made to [the] [p]laintiff (1) only in her individual capacity, (2) prior

to the time that [the] [d]efendants answered the complaint, (3) long before the deadline for class

certification motions, and (4) which would have required her to abandon the claims of the

putative class."); Morgan v. Account Collection Technology, LLC, No. 05-CV-2131 (KMK),

2006 WL 2597865, at *8 (S.D.N.Y. Sept. 6, 2006) ("[The] [p]laintiff's claims ought not to be

rendered moot by an offer of judgment submitted before counsel has a reasonable opportunity to

compile a record necessary to support a motion for class certification.") (quoting Vega v. Credit

Bureau Enters., Civil Action No. CV-02-1550 (DGT), 2003 WL 21544258, at *2 (E.D.N.Y. July

9, 2003)); Nasca v. GC Services Ltd. Fartnership, 2002 WL 31040647, at *3 (S.D.N.Y. Sept. 12,

2002) ("[The plaintiff] has not yet had a reasonable opportunity to file a motion for certification.

Less than two months after it filed its answer, and one month after the initial conference, [the

Defendant] submitted its Rule 68 offer. . . .  To allow a Rule 68 offer to moot a named plaintiff's

claim in these circumstances would encourage defendants to pick off named plaintiffs in the

earliest stage of the case."); White v. OSI Collection Services, Inc., No. 01-CV-1343(ARR),

2001 WL 1590518, at *5–6 (E.D.N.Y. Nov. 5, 2001 ("[W]hen defendant's offer of judgment

comes very early in the litigation [one day after the defendant answered] and before a plaintiff,

who has indicated in her complaint her intention to pursue the claim in a representative manner,

can reasonably bring a motion to certify[,] it is proper to apply the relation back exception even

though no motion for class certification has yet been filed.  Thus, the defendant's offer of

judgment did not moot plaintiff's claims in this case.").

  The Court is persuaded by the reasoning of the McDowall court and of those district

courts which have adopted a similar position.  Indeed, "the application of the mootness exception

in this case is essential to prevent the race to the courthouse from entirely circumventing and

stymieing the class action mechanism."  White, 2001 WL at *6.  Here, the Defendant made its

offer of judgment just two months after the Plaintiff had commenced this action and prior to answering the Complaint. As a result, the Plaintiff was not given a reasonable opportunity to file its motion for class certification. Moreover, within three months after commencing this action and about two weeks after the Defendant's offer of judgment was made, the Plaintiff did file a motion for class certification. Of importance, these circumstances make this case quite distinguishable from Ambalu or Greif, the latter of which was decided by this Court, since the plaintiffs in Ambalu and Greif waited a year and a half or more to move for class certification, but failed to do so. Thus, the Court finds that the Defendant's offer of judgment did not render the plaintiff's claims moot and that the Court may exercise subject matter jurisdiction over this case.

## E. As to Whether the Plaintiff Stated a Claim Under the FDCPA

Having resolved the issue of subject matter jurisdiction, the Court now turns to the Fed. R. Civ. P. 12(b)(6) basis for the Defendant's motion. According to the Defendant, the Plaintiff failed to state a claim because the Defendant is not a "debt collector" and thus, not subject to the FDCPA. Further, the Defendant contends that the Plaintiff wrongly claims that the Defendant was a "creditor" that is now subject to the FDCPA pursuant to the "false name exception" of 15 U.S.C. § 1692(a)(6). In other words, the Defendant asserts that it was neither a "debt collector" nor a "creditor" under the FDCPA, but instead was a merely a billing agent whose conduct falls outside of the reach of the FDCPA. The Court agrees.

Under the FDCPA, a "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The

FDCPA excludes from the definition of "debt collector" "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was originated by such person [or] concerns a debt which was not in default at the time it was obtained by such person[.]"  Id.  However, "[n]otwithstanding [this] exclusion," under the false name exception, "the term ['debt collector'] includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts."  Id.  The FDCPA defines the term "creditor" to "mean[] any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another."  15 U.S.C. § 1692a(4).

Here, while the Plaintiff asserts that the Defendant "regularly engages in the collection of debts allegedly owed by consumers through correspondence and telephone calls," the Plaintiff does not assert that the collection of debts is the principal purpose of the Defendant's business, as required by the FDCPA's definition of "debt collector."  (2d Amend. Compl., ¶ 10.) Moreover, pursuant to the contract that was entered into between the Plaintiff and Martial Arts America, the Defendant, on behalf of Martial Arts America, was authorized to take monthly payments directly from the Plaintiff's checking account prior to any default by the Plaintiff.  (2d Amend. Compl., ¶¶ 20–22.)  In fact, the Plaintiff admits that the Defendant "did take some monthly payments from the Plaintiff's bank account, *but then* . . . [the] Plaintiff defaulted on the payments called for under the contract."  (2d Amend. Compl., ¶ 23, emphasis added.)

Therefore, in this way, the Plaintiff concedes that the Defendant obtained the debt from Martial Arts America before it was in default, which means the Defendant is excluded from the

FDCPA's definition of the term "debt collector."  See Muniz v. Bank of America, N.A., No. 11 Civ. 8296(PAE), 2012 WL 2878120, at *5 (S.D.N.Y. July 13, 2012) ("[B]ecause plaintiffs fail to adequately allege that the loan was in default [when it was obtained], they fail to allege that BOA is a "debt collector" under the FDCPA."); Costigan v. CitiMortgage, Inc., No. 10 Civ. 8776(SAS), 2011 WL 3370397, at *9 (S.D.N.Y. Aug. 2, 2011) ("The Amended Complaint does not allege that [the plaintiff's] loan was in default at the time [the defendant] 'obtained' that loan. As a result, [the defendant] is excluded from the definition of 'debt collector' under the statute."); Thomas v. JPMorgan Chase & Co., 811 F.Supp.2d 781, 801–02 (S.D.N.Y. 2011) ("[T]he [amended complaint] does not allege that the loans of the named plaintiffs were in default at the time [the defendant] 'obtained' those loans.  As a result, [the defendant] is excluded from the definition of 'debt collector' under the statute."); Zirogiannis v. Dreambuilder Investments LLC, 782 F.Supp.2d 14, 19 (E.D.N.Y. 2011) (Spatt, J.) ("[W]hile the defendants implicitly admit that [one of the defendants] acquired the plaintiff's mortgage loan after it was in default, this fact is nowhere alleged in the complaint. Without this allegation, the plaintiff has not stated a basis for treating [that defendant] as a debt collector under the FDCPA.").

Nevertheless, the Plaintiff advances an alternative argument for why the Defendant's conduct is covered by the FDCPA.  In this regard, the Plaintiff suggests that the Defendant was standing in the shoes of the creditor, Martial Arts America, and should thus be considered a creditor under the FDCPA.  (Pl. Opp., pg. 5.)  As discussed above, under the FDCPA "'creditors' are exempt from the [FDCPA's] requirements," Zirogiannis, 782 F.Supp.2d at 19, except when they use a false name in their attempts to collect their own debts, 15 U.S.C. § 1692a(6).  Here, the Plaintiff alleges that the Defendant was a creditor,but "lost any protection afforded a

creditor" under the FDCPA because it used a false name, "Merchants Interstate Collection

Agency" when it tried to collect the debt from the Plaintiff.  (Pl. Opp., pg. 9.)

In making this argument, the Plaintiff primarily relies on the Sixth Circuit's decision in

Bridge v. Ocwen Federal Bank, FSB, 681 F.3d 355 (6th Cir. 2012).  In Bridge, the Sixth Circuit

held as follows:

> If an entity which acquires a debt and seeks to collect it
> cannot be both a creditor and a debt collector, can it be neither?
> We answer no. To allow such an entity to define itself out of either
> category would mean that the intended protection of the FDCPA is
> unavailable. Both the statutory language and legislative history of
> the FDCPA establish that such an entity is either a creditor or a
> debt collector and its collection activities are covered under the
> FDCPA accordingly.
> The distinction between a creditor and a debt collector lies
> precisely in the language of § 1692a(6)(F)(iii). For an entity that
> did not originate the debt in question but acquired it and attempts
> to collect on it, that entity is either a creditor or a debt collector
> depending on the default status of the debt at the time it was
> acquired.  The same is true of a loan servicer, which can either
> stand in the shoes of a creditor or become a debt collector,
> depending on whether the debt was assigned for servicing before
> the default or alleged default occurred.  Wadlington v. Credit
> Acceptance Corp., 76 F.3d 103, 106–08 (6th Cir.1996); see also
> Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir.1985).
> This interpretation of the Act is supported by Congress's intent in
> passing it.

Id. at 359–60.

While the Court does not deny that the Bridge decision is persuasive, it cannot ignore the

fact that no court within the Second Circuit has adopted the Sixth Circuit's reasoning.  Moreover,

the few cases that have touched upon this issue appear to cut the other way.  For example, in

Coleman v. North Shore Health System, No. 97–CV–1871–DRH, 1998 WL 34077715

(E.D.N.Y. July 2, 1998), North Shore University Hospital ("the Hospital"), the creditor,

forwarded the bill at issue to North Shore Health System ("NSHS").  Id. at *1, 6.  In turn, NSHS

attempted to collect the outstanding balance on the subject bill by sending the plaintiff a letter from one of its unincorporated divisions, "Regional Claims Recovery Service." Id. at 1. The plaintiff in that case argued that the FDCPA should apply to NSHS because it was a creditor subject to the false name exception. Id. at 3. However, the court emphasized that "[t]he bill refers to the Hospital and makes no mention of NSHS; it nowhere indicates that monies should be paid to any entity other than the Hospital." Id. at *6. The court went on to hold that "the provision of the FDCPA which includes within the scope of the Act a creditor who 'in the process of collecting his own debts uses any name other than his own name which would indicate that a third party is collecting or attempting to collect such debts,' has no application here." Id.

In addition, in Wood v. Capital One Services, LLC, 718 F.Supp. 2d 286 (N.D.N.Y. 2010), the plaintiff received a letter from Capital One Services concerning its consumer credit account with Capital One Bank that was allegedly delinquent. Id. at 289. The letter indicated that Capital One Services was an affiliate of Capital One Bank and was the servicer of the plaintiff's account. Id. Since the plaintiff had alleged that Capital One Services had the principal business of debt collection, the court found that the plaintiff had sufficiently alleged that Capital One Services was a debt collector under the FDCPA and allowed the plaintiff's complaint to survive the defendants' motion to dismiss with respect to the plaintiff's FDCPA claims against Capital One Services. Id. at 290. However, as to the plaintiff's claims against the creditor, Capital One Bank, the Wood court declined to apply the false name exception because the "[p]laintiff's complaint [was] missing an element critical to pleading that a creditor is a debt collector under the 'false name' exception of the FDCPA." Id. at 291. In this regard, the court explained "[t]he complaint never alleges that Capital One Bank . . . *is collecting its own debts or*

*is attempting to collect its own debts*. . . . Since the complaint does not even allege that Capital

One Bank is attempting to collect its own debts, the 'false name' exception does not apply." Id.

(emphasis added).  Therefore, the court granted the motion to dismiss with respect to the FDCPA

claims against Capital One Bank.  Id.

In this case, the Plaintiff's Second Amended Complaint acknowledges that Martial Arts

America was the creditor.  Moreover, the Plaintiff never alleges that the Defendant was

attempting to collect its own debt.  Rather, it appears to this Court that the Defendant was

essentially a billing agent for Martial Arts America.   Indeed, the Second Amended Complaint

suggests that the Defendant acquired the debt from Martial Arts America before it was in default

and was trying to collect the debt for Martial Arts America, not for itself.  As such, following the

reasoning of the Coleman and Wood courts, this Court holds that (1) the Defendant is not a

creditor under 15 U.S.C. § 1692a(4) because the Plaintiff does not allege it was collecting its

own debt and (2) even if the Defendant was a creditor, the false name exception found in the

FDCPA's "debt collector" definition is inapplicable here because the Plaintiff does not allege

that the Defendant was "in the process of collecting [its] own debts," as required under 15 U.S.C.

§ 1692a(6) in order for the false name exception to apply.  Despite the Sixth Circuit's well-

reasoned and thoughtful opinion in Bridge, this Court is unwilling to expand the FDCPA's

definitions of "creditor" or "debt collector" in this case to include billing agents without

guidance from the Second Circuit.

Accordingly, viewing the Plaintiff's Second Amended Complaint in a light most

favorable to the Plaintiff, the Court finds that the Plaintiff has failed to state a claim for relief

under the FDCPA that is plausible on its face.  Therefore, the Defendant's motion to dismiss is

granted.

### III.    CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED** that the Defendant's motion to dismiss the Second Amended Complaint

under Federal Rule of Civil Procedure 12(b)(6) is hereby granted; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**
Dated: Central Islip, New York
May 7, 2013

_____ /s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge

24